# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>CHARLES PARKIN,<br><br>        Defendant. | Case No. 2:15-cr-00212-JCM-NJK<br><br>REPORT AND RECOMMENDATION |

This matter is before the Court on the question of Defendant Charles Parkin's competency to stand trial. On January 22, 2020, the United States filed its expert's report regarding Defendant's competency. Docket No. 90. On January 24, 2020, Defendant filed his expert's report regarding his competency. Docket No. 94. On January 30, 2020, the Court held a competency hearing, at which both experts testified. Docket No. 96. At the end of the hearing, the Court allowed the parties to file simultaneous briefing as to their respective positions on the issue of competency. *Id*. On March 6, 2020, both parties filed their briefs regarding Defendant's competency. Docket Nos. 100, 101.

## I.  BACKGROUND

On July 21, 2015, a federal grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with theft of government funds, in violation of 18 U.S.C. § 641 and Social Security fraud, in violation of 42 U.S.C. § 408(a)(4). Docket No. 1. On July 31, 2015, Defendant appeared in court for his continued initial appearance and arraignment and plea. Docket No. 6.

The Court appointed counsel to represent Defendant and ordered him released pending trial on a personal recognizance bond with conditions. *Id*.

On January 17, 2019, Defendant filed a motion for competency hearing. Docket No. 60. In support of his motion, Defendant filed a letter from Dr. Norman Roitman, who examined Defendant at his attorney's request. Docket No. 61. On January 22, 2019, the Court granted Defendant's motion and set a competency hearing for January 28, 2019. Docket No. 62. The parties requested numerous continuances of the competency hearing, all of which were granted. Docket Nos. 63, 64, 69, 70, 73, 74, 79, 80, 83, 84, 85, 86. On January 30, 2020, the parties and their experts appeared before the Court for the competency hearing. Docket No. 96.

## II.     ANALYSIS

The Supreme Court of the United States has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Medina v. California*, 505 U.S. 437, 453 (1992)). "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Cooper*, 517 U.S. at 354 (internal citation omitted). "[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." *Drope v. Missouri*, 420 U.S. 162. 171 (1975).

The treatment of offenders suffering from a mental disease or defect has been codified in the Federal Criminal Code. 18 U.S.C. §§ 4241-48. If a question is raised concerning whether a defendant is competent to stand trial, the Court first determines whether that defendant suffers

from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. 18 U.S.C. §§ 4241(a) and (d). When the Court has reasonable cause to believe a defendant is suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him or assist properly in his defense, the Court shall conduct a hearing to determine whether that defendant is competent to stand trial. 18 U.S.C. §4241(a).

A defendant is deemed competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and ... has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402 (1960) (per curiam) (internal quotation marks omitted). *See also United States v. Gastelum-Almeida*, 298 F.3d 1167, 1171 (9th Cir. 2002). "Whether a defendant is capable of understanding the proceedings and assisting counsel is dependent upon evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence." *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997).

The United States has the burden of demonstrating by a preponderance of the evidence that the defendant is competent to stand trial. *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991). The test that must be applied in determining competency to stand trial is set forth in *Dusky*:

> [I]t is not enough for the district judge to find that "the defendant [is] oriented to time and place and [has] some recollection of events," but that the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him.

*Dusky*, 362 U.S. 402-03.

The parties agree that the only factor of the *Dusky* test at issue is whether Defendant is competent to assist counsel. Docket No. 99 at 28-29, 50. While a finding of incompetency is predicated on the existence of a mental disease or defect, the standard for evaluating a defendant's competency to stand trial is not a medical inquiry; rather, it is a legal determination. *United States v. Makris*, 535 F.2d 899, 908 (5th Cir. 1976). In determining competency, the Court may rely on a number of factors, including medical opinions and the Court's own observation of the defendant. *See Torres v. Prunty*, 223 F.3d 1103, 1109 (9th Cir. 2000).

### A. Dr. Sunshine Collins

The United States presented the testimony of Dr. Sunshine Collins, who is a psychologist and was qualified as an expert in psychology and competency. Docket No. 99 at 4-8. Dr. Collins testified that she specializes in forensic evaluations in her private practice she has maintained in Las Vegas for the past three years. *Id*. at 4, 6. Dr. Collins further testified that she has received specialized training in conducting competency evaluations and is certified as a competency evaluator in the Eighth Judicial District of Clark County, the Henderson Municipal Court, and the City of Las Vegas courts. *Id*. at 5. Dr. Collins testified that, throughout the course of her private practice, she has completed approximately five to eight competency evaluations per week. *Id*. at 6.

In conducting a competency evaluation, Dr. Collins testified, she seeks to determine if the individual she is evaluating meets the three prongs of the *Dusky* standard, i.e., an ability to understand the charges and the scope and nature of the possible penalty; understanding court procedures, individuals involved in court, and the adversarial nature of the court process; and the ability to assist counsel in preparation of a defense. *Id*. at 8. Dr. Collins also considers, using the

Diagnostic Statistical Manual ("DSM") whether the individual she is evaluating has a mental disease or defect. *Id*.

In the instant case, Dr. Collins had access to the discovery documents, Defendant's mental health records for his outpatient treatment, his compensation and pension records, and "numerous other medical documents…" *Id*. at 9. Additionally, Dr. Collins conducted an in-person evaluation of Defendant and interviewed his son. *Id*. at 9-10. Dr. Collins testified that Defendant compiled his medical records and provided them to her on a USB drive. *Id*. at 10. When Dr. Collins opened the files on the drive, she found them to be labeled and well-organized and she found that he had highlighted and notated individual files. *Id*. Dr. Collins further found that the records Defendant provided her were relevant to the issue of competency. *Id*. Dr. Collins found that Defendant is a good historian with a good memory. *Id*. at 14. Dr. Collins found that Defendant has only one current mental health diagnosis – major depressive disorder – which is well-managed and does not impact his competency to stand trial. *Id*. at 25. Dr. Collins does not think that Defendant suffers from any phobias. *Id*. at 27. She testified, however, that even if Defendant did suffer from a fear of prosecution, it would be unlikely to impact his competency to stand trial, since the phobia is limited to the object of the phobia. *Id*. Dr. Collins found that, though Defendant feels that the charges against him are unfair, he did not become so emotional that he was unable to have a coherent conversation with her. *Id*. at 22. Additionally, Dr. Collins found that Defendant's emotional response to the case against him does not fall outside the range of emotions shown by an average criminal defendant. *Id*.

After considering everything provided to her, including her hour and one-half in-person evaluation of Defendant, Dr. Collins concluded that Defendant is competent to stand trial under each prong of the Dusky standard. *Id*. at 25-26. In making her determination, Dr. Collins

considered that Defendant was able to identify, gather, and organize a large amount of relevant medical records, which he provided to her on a well-organized USB drive. *Id*. at 10. Dr. Collins considered that Defendant understands the role of his defense attorney and, when asked how he might assist his attorney, Defendant stated that he "has been able to obtain numerous records to share with his attorney, as well as to develop ideas about other records that could be relevant…" *Id*. at 18, 19. Defendant even shared a potential defense strategy that he had thought of with Dr. Collins which, she testified, demonstrated that he "was able to put together some possible defense data to use with his attorney in planning his strategies." *Id*. at 21.

Prior to writing her report regarding Defendant's competency to stand trial, Dr. Collins reviewed the original report written by Defendant's expert, Dr. Roitman. *Id*. at 12. After writing her report, Dr. Collins reviewed Dr. Roitman's second report, which did not change any of her conclusions. *Id*.

**B.  Dr. Norman Roitman**

Dr. Norman Roitman is a board-certified psychiatrist who has been practicing forensic psychiatry since 1991. *Id*. at 49-51. Dr. Roitman has conducted several hundred competency evaluations and issued reports regarding competency. *Id*. at 56. Dr. Roitman testified in the instant case as an expert in forensic psychiatry on the issue of competency. *Id*. at 56.

The majority of Dr. Roitman's experience conducting competency evaluations has involved determining the competency of juveniles. *Id*. at 86. Dr. Roitman testified that the human brain, as well as the emotional and developmental state of a juvenile, is "markedly different" from that of an adult. *Id*. at 86. Dr. Roitman agreed with Dr. Collins that Defendant understands the nature of the charges and the proceedings against him. *Id*. at 91. Dr. Roitman testified that Defendant is "an intelligent man and has facts, knows the roles of court officers, court procedures,

and was able to answer in both evaluations with no problems those questions having to do with definitions and procedures." *Id*. at 50.

Dr. Roitman conducted two separate competency evaluations of Defendant in the instant case. *Id*. at 56-57. He issued a report on March 5, 2018, and a second report on January 1, 2020. *Id*. at 57. In conducting his evaluation, Dr. Roitman asked Defendant to fill out a standard questionnaire, then he conducted an in-person interview of Defendant. *Id*. at 59. Dr. Roitman also reviewed Defendant's medical records that contained "psychotherapies, medications, medical visits, and visits with his psychiatrist." *Id*. at 70. Dr. Roitman noted Defendant's high level of opioid use in 2018 which, he testified, can "suppress the ability to think, calculate, and also opioids affect the emotional areas of the brain…" *Id*. at 62-63. Dr. Roitman considered that Defendant has a "profound array" of medical problems and a "wide array" of chemical influence on his mental functioning, Defendant's ability to think and reason and answer the basic questions of competency, and the ability to assist counsel and process alternative please. *Id*. at 63-64. Dr. Roitman testified that the form Defendant filled out "was the best I've ever seen." *Id*. at 65. When Dr. Roitman approached the issue of preparing his defense with his attorney, Defendant "seemed to fall apart and he would repeatedly say, why me, why are they doing this to me." *Id*. at 66. Dr. Roitman testified that he was unable to bring Defendant back to task. *Id*. at 69. After completing this evaluation in 2018, Dr. Roitman opined that, "[t]o a reasonable degree of medical certainty, based on the review of documents and the psychiatric examination, I find Mr. Parkin lacks the capacity to help prepare his defense." Docket No. 61 at 12.

Dr. Roitman concluded that Defendant's "emotions interfered with his ability to think and reason on questions that had to do with facing trial, preparing for defense, facing accusers, having to defend himself under these types of pressure…" Docket No. 99 at 64. Dr. Roitman further

testified that he found in 2018 that, when Defendant is "facing a situation that triggers his emotion, his cognitive capacity is flooded by his emotional reactions, a panic attack." *Id*. at 71. Despite this testimony, however, Dr. Roitman's written evaluation specifically states that Defendant was "not agitated, belligerent, hostile[,] or threatening" and that he "did not clutter or disarticulate." Docket No. 61 at 7. Further, Dr. Roitman's report states that, although Defendant had reported recent panic attacks, "he did not exhibit panic behaviors." *Id*. at 8. On topics relevant to his defense, Dr. Roitman wrote, Defendant "was pensive, defensive[,] and seemed detached into a revery of unjustified attacks." *Id*. In court, Dr. Roitman testified that, during this evaluation, he was unable to bring Defendant back to task once his emotions were triggered. Docket No. 99 at 69. In his report, however, Dr. Roitman wrote that, "[a]fter a time expressing his feelings and thoughts about his victimization, Mr. Parkin was able to be refocused and brought back to task. He underwent the regressive transformation several times in matter pertinent to defense planning." Docket No. 61 at 9.

Dr. Roitman conducted a second examination of Defendant in January 2020. Docket No. 99 at 72. After evaluating Defendant, he diagnosed him with a specific phobia with panic. *Id*. Dr. Roitman found that Defendant suffers from a few of prosecution that "triggers a panic attack that overwhelms his ability to think and reason." *Id*. at 72-73; Docket No. 94. Dr. Roitman found that this diagnosis is specifically tied to Defendant's inability to assist properly with his defense. Docket No. 99 at 72-73.[1] He "approached the second interview with more vigor because there was the presence of a[n] expert report and the arguments needed to be made." *Id*. at 113. Dr. Roitman found that Defendant is fully able to remember relevant facts, gather relevant documents,

---

[1] Dr. Roitman also discussed PTSD; however, he did not use that diagnosis as a basis for his finding of incompetency. The Court, therefore, need not address it.

communicate with his attorney, and that he has a good relationship with his attorney. *Id*. at 94. Defendant also discussed a potential legal strategy with Dr. Roitman. *Id*. at 92.

On cross-examination, Dr. Roitman was unable to articulate the exact nature of Defendant's phobia, as it does not appear to apply to the courtroom, to any court hearing, to discussing the case or potential defenses. *Id*. at 97, 106. Dr. Roitman could not explain what a treatment for fear of prosecution should be. Id. at 109. Dr. Roitman has never before diagnosed anyone with fear of prosecution. *Id*. at 105.

Dr. Roitman disagreed with Dr. Collins' report, as he thought she used more of a cognitive approach. *Id*. at 76. Dr. Roitman thought Dr. Collins "tended to equate [Defendant] with other defendants who don't have his medical history and aren't under his circumstances." *Id*. at 76. Dr. Roitman thought that Dr. Collins missed data because she did not speak to Defendant's attorney about his observations. *Id*. at 77-78. He also thought that her report did not appear "to be organized in accordance with the question that she was asked to answer…" *Id*. at 78.

Dr. Roitman proposed a plan to restore Defendant to competency that included techniques such as systematic desensitization, cognitive behavioral therapy, mindfulness training, and clinical hypnotherapy. Docket No. 94 at 26-27. Dr. Roitman did not believe that further medication would be helpful, but thought that Defendant would benefit from treatment as he suggested in combination with his present psychiatric treatment. Docket No. 99 at 83-84, 116-117.

**C. Findings**

Both doctors found that Defendant is intelligent and that he understands the charges against him as well as the court proceedings and the necessary players. The only question before the Court, then, is whether Defendant can assist his counsel. The record is clear that Defendant could gather all relevant medical records and organize them in an appropriate fashion, even highlighting

9

some important portions. In speaking with both doctors, Defendant was able to articulate a cognizable legal defense. While Defendant feels that the charges against him are unfair and is emotional about the case, the Court finds that many criminal defendants feel the same way.

The Court finds that some of Dr. Roitman's testimony contradicts his written findings. As one example, he testified that, during one of his examinations, he was unable to bring Defendant back to task once his emotions were triggered. This testimony, however, contradicts Dr. Roitman's report, which states that he was able to refocus Defendant and bring him back to task after allowing him to express his feelings. Dr. Roitman's testimony regarding his second evaluation of Defendant – that he "approached the second interview with more vigor because there was the presence of a[n] expert report and the arguments needed to be made" – troubles the Court as it does not appear that he approached the interview in an unbiased manner. The Court finds that Dr. Collins' report and testimony are simply more objective than that given by Dr. Roitman. The Court therefore places more weight on Dr. Collins' findings than on those made by Dr. Roitman.

Finally, the Court watched Defendant throughout the competency hearing. The Court noted that he remained calm and collected during the hearing. The Court also observed him whispering back and forth with his attorney and, on occasion, writing notes to one of his attorneys as he listened to the testimony. The Court also observed that attorney then speak to Defendant's other attorney after reading Defendant's note. Defendant appeared more than capable of assisting his attorney throughout the competency hearing.

The Court's observations of Defendant, combined with the credible report and testimony of Dr. Collins, convince the Court that Defendant is able to assist his attorney with his defense. Therefore, the Court finds that Defendant meets all prongs of the *Dusky* test.

## III. CONCLUSION

Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant Charles Parkin be required to stand trial based on the undersigned's findings that he is competent to do so.

DATED: April 3, 2020.

NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

This report and recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).